351 So.2d 1183 (1977)
COMMERCIAL UNION INSURANCE CO.
v.
ADVANCE COATING CO. et al.
No. 59749.
Supreme Court of Louisiana.
November 14, 1977.
*1184 Peter T. Dazzio, Minos D. Miller, III, Watson, Blanche, Wilson & Posner, Baton Rouge, for defendant-applicant.
Dan Edward West and H. Evans Scobee, Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, for plaintiff-respondents.
SUMMERS, Justice.
Barouco, Inc., leased to Advance Coating, Inc., an air compressor, a sandblasting machine, fifty feet of air hose and two hundred feet of sandblasting hose. By the terms of the lease Advance expressly agreed to indemnify Barouco, Commercial Union Insurance Company's insured, for any and all loss or damage occurring to the leased equipment.
On or about August 16, 1974, while Advance was in possession of the leased equipment, a barge afloat on the Mississippi River on which the equipment had been placed sank adjacent or near to the Cargill Grain Elevator Dock. As a result the leased equipment was destroyed and Barouco sustained damage thereby to the extent of $12,515.
Commercial Union Insurance Company paid its insured, Barouco, the owner of the destroyed equipment, its full value. Commercial was, under the terms of its policy, subrogated to Barouco's rights and claims against Advance and its liability insurers, Reliance Insurance Company and Hartford Accident and Indemnity Company, and against the owners of the barge, Baton Rouge Marine Contractors, Inc., and its insurer, for claims arising out of the alleged negligent destruction of the leased equipment. Accordingly, Commercial filed suit against Advance and its insurers and Baton Rouge Marine Contractors, Inc. and its insurer. Advance answered Commercial's petition by general denial. Alternatively, Advance alleged that Reliance and Hartford were its liability insurers and made them third party defendants. Hartford denied coverage under its policy insuring Advance.
Reliance filed an exception to Commercial's petition alleging that the loss occasioned by the alleged neglect of Advance occurred "while the property was water-borne" and such a loss was not covered under its policy because of the following exclusion clause:
"THIS POLICY DOES NOT INSURE AGAINST:
. . . . . .
(h) Loss or damage while the property is water-borne except while being transported on any regular ferry:"
The trial court sustained the exception as to Reliance, and Commercial appealed to the First Circuit, where the judgment was vacated and set aside and the case was remanded for further proceedings. 343 So.2d 299, La.App. Certiorari was granted on Reliance's application. 345 So.2d 906 La.
By consent of the parties the judgment under review is to be considered by this Court as a ruling on a motion for summary judgment.
*1185 On the basis of the record before us it may reasonably be inferred that the barge upon which the leased equipment was located was alongside a dock or wharf. Further, that the sandblasting equipment was placed aboard the barge in order that it could be used to sandblast vessels moored at that location. On this inference it is concluded that the barge was afloat, but was not then utilized in transporting the equipment.
Undoubtedly the barge and its burden were water-borne. The problem arises, however, when Commercial contends that the word "water-borne" has two meanings, one being "floated or floating upon the water; supported by water so as not to sink or to touch bottom," and the other, "conveyed by water and esp. by boat (traffic)." Webster's Third New International Unabridged Dictionary (1961). A word with double meanings is ambiguous, according to this contention. And if an insurance policy is so drawn as to be ambiguous and, for that reason, susceptible of two or more interpretations, either one being reasonable and sensible, the interpretation most favorable to the insured should be adopted.
Based on these propositions Commercial argues that the equipment was insured because the water-borne exclusion only applied to the equipment while it was being transported on water. Therefore, the equipment afloat alongside the dock, not being transported, was covered.
Commercial's position is not well-taken. In our view the property was not insured under the policy while it was water-borne, whether it was afloat on a barge at a dock or was being transported on a vessel afloat.
Rules of construction require that words of a contract are to be understood, like those of a law, in their common and usual signification, without attending so much to grammatical rules, as to the general and popular use. La. Civil Code arts. 14 and 1946. After recognizing the general rule that in case of doubt as to its meaning, a contract will be construed against the party who framed it, this Court, in Muse v. Metropolitan Life Ins. Co., 193 La. 605, 192 So. 72 (1939), adopted the following explanation of the rule:
"But the rule is equally well settled that contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary and popular sense. The rule of strict construction does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists, nor does it authorize the court to make a new contract for the parties or disregard the evidence as expressed, or to refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties, and embodying requirements, compliance with which is made the condition of liability thereon. Neither does the rule prevent the application of the principle that policies of insurance, like other contracts, must receive a reasonable interpretation consonant with the apparent object and plain intent of the parties . . .
"In the absence of statutory provisions to the contrary, insurance companies have the same right as individuals to limit their liability, and to impose whatever conditions they please upon their obligations not inconsistent with public policy; and the courts have no right to add anything to their contracts, or to take anything from them. . . ."
The policy involved here is a Contractor's Equipment Floater. The brief represents that it covers the property only when it is within the 48 contiguous states of the United States, the District of Columbia and Canada. This limitation indicates, at least, that coverage does not extend to coastal and sea waters. The "water-borne" exclusion then must of necessity apply only to inland waters. The extent of the water-borne exclusion is further to be derived from the limited exception to be found within the exclusionary clause itself "except while being transported on any regular *1186 ferry." The implication which flows from such an exception is that the insured equipment would be transported on land from place to place by its users. In view of the water-borne exclusion, it was necessary to provide this exception to allow transportation of the equipment by ferries encountered en route. Since this is the stated and only exception to the "water-borne" exclusion, no sound reasons appear to justify creating another exception to the broad and comprehensive import of the word "water-borne""floated or floating upon the water."
Logic also supports a conclusion that the water-borne exclusion applies any time the equipment was floated or floating upon the water. It would not be considered water-borne on a stationary fixed drilling platform in a stream or lake or on a dock or wharf permanently affixed to the bottom of inland waters, just as it would not be if situated on land. It is apparent from this reasoning why the insurance policy contains the water-borne exclusion. There is a greater risk of loss to the equipment on water-borne vessels sinking as a result of collisions, storms, leaks and other causes than could be expected to result from its use on land, and this greater risk exists in varying degrees whether the water-borne equipment is tied to the dock or being transported.
Because a word has two meanings, one broad and one more restrictive included within the broader meaning, it does not follow that the narrower meaning was intended. This is especially true when the intention is apparent from the context in which the word is used and the circumstances surrounding the particular insurance contract. Why, then, should the Court adopt Commercial's position which would deny application of the broader meaning of water-borne in preference to the limited meaning when there is no indication that the more limited meaning was intended? To the contrary, as this opinion attempts to explain, the context of the entire policy and the nature of the equipment insured, together with the clause limiting any exception to transportation on a ferry, present convincing support for a conclusion that the parties understood and intended that the equipment would not be insured when afloat, whether at dockside or while being conveyed by water from one place to another.
It is barely conceivable that the parties intended that the water-borne equipment would be insured while the barge was tied up to the dock, but not insured while it was being towed to another berth, where, upon arrival, it would again become insured when its mooring was accomplished.
All matters considered, we are of the opinion that the reasonable and common sense reading of the exclusionary clause requires a conclusion that the loss suffered here was not covered by the Reliance policy.
For the reasons assigned, the judgment of the Court of Appeal is reversed and set aside, and the judgment of the trial court is reinstated and made the judgment of this Court.
TATE, Justice.
I respectfully dissent. The Court of Appeal correctly decided the issue. 343 So.2d 299 (La.App. 1st Cir. 1977).
CALOGERO, J., dissents for the able reasons assigned by the Court of Appeal.
DENNIS, J., dissents for the reasons assigned by the Court of Appeal.