949 So.2d 1247 (2007)
Howard P. ELLIOTT, Jr.
v.
CONTINENTAL CASUALTY COMPANY.
No. 2006-CC-1505.
Supreme Court of Louisiana.
February 22, 2007.
Allen & Gouch, Scott Fry Davis, David Scranton Daly, Metairie, for Applicant.
Howard Payne Elliott, Jr., Baton Rouge, for Respondent.
Prior report: 938 So.2d 61.
TRAYLOR, Justice.
We granted certiorari in this case in order to determine whether the trial court erred in denying Defendant's motion for summary judgment. Defendant, a legal malpractice insurer, issued a lawyers' professional liability policy to Plaintiff. During the time that this policy was in effect, Plaintiff was involved in several fee disputes with another attorney. As a result of the fee disputes between Plaintiff and this other attorney, the attorney filed a "Petition for Declaratory Judgment, Legal Fees Due, and Injunction" against Plaintiff, and in his amended petition, the attorney alleged that Plaintiff referred a client to him without informing him that the client's cause of action had prescribed. *1248 Further, the attorney suggested that Plaintiff was the one who had allowed the client's cause of action to prescribe. Thus, the attorney claimed that he was induced to enter into an attorney-client contract with a client having a prescribed cause of action, and as such, the attorney argued that he suffered certain monetary damages. Because the attorney alluded to Plaintiff's possible malpractice (i.e., allowing the client's cause of action to prescribe), Plaintiff asserted that Defendant had a duty to defend him in this underlying litigation. Defendant, however, argued that the professional liability policy did not cover any litigation couched in terms of a fee dispute. For the reasons that follow, we reverse the trial court's denial of summary judgment and grant summary judgment in favor of Defendant.

FACTS AND PROCEDURAL HISTORY
Madro Bandaries and Howard P. Elliott, Jr. are both practicing attorneys in the State of Louisiana, and in the past, they have worked on various cases together.[1] After working together on several cases, fee disputes arose between the parties, and ultimately, Mr. Elliott filed a lawsuit against Mr. Bandaries, seeking to obtain those fees he believed he was due. As a result of the litigation initiated by Mr. Elliott, Madro Bandaries, APLC ("Bandaries") filed a "Petition for Declaratory Judgment, Legal Fees Due, and Injunction" against the instant Plaintiff Howard P. Elliott, Jr. ("Elliott") on January 28, 2004, as Bandaries asserted that Elliott was fraudulently attempting to obtain said legal fees. On June 22, 2004, Bandaries filed an amended petition. Within the amended petition, the following paragraph was included:
Defendant, Howard P. Elliott, Jr., pursuant to discovery requests by plaintiff, produced a copy of a contract with "Gary L. Ring," said agreement being dated May 29, 2000. This was the same "Gary Ring" mentioned in Paragraph 9 of plaintiff's original pleadings, and whom Howard P. Elliott, Jr. referred to Madro Bandaries, APLC on or about September 15, 2000, with plaintiff contracting with Ring on November 14, 2000. At no time did Howard P. Elliott, Jr. inform plaintiff, or his associates that he had allowed Ring's cause of action to prescribe while he represented Ring. Ring's cause of action, a citation for carrying an oversized load, took place on March 9, 2000, with the citation providing that Ring, to preserve his rights, had to file suit with in [sic] "90 days" of this date or on or about June 9, 2000. Plaintiff would not have accepted this case if he had known that Howard P. Elliott, Jr. had allowed the matter to prescribe. To date, plaintiff has incurred costs/advances in the amount of $15,745.00 and work in the amount of $18,090.80 with little or no chance of recovering same in that the matter has been before the Louisiana Supreme Court on two occasions on the basis that Ring's claim has prescribed, thus plaintiff asks the Court to order that Howard P. Elliott, Jr. reimburse plaintiff for these amounts.[2]
At the time the litigation between Bandaries and Elliott began, Elliott had a "Lawyers Professional Liability Policy" in effect with the instant Defendant Continental Casualty Company ("Continental"), which policy was effective from October *1249 16, 2003, through October 14, 2004. Pursuant to the mandates of the insurance policy  a "claims made and reported policy"[3]  Elliott forwarded Bandaries' claim to Continental, in addition to submitting a request that Continental defend him in the action. However, Continental declined to provide a legal defense in the action, as Continental maintained that this policy did not provide coverage in fee dispute matters. Thus, on September 23, 2004, Elliott initiated the action that is currently before this Court.
In his petition against Continental, Elliott argued that the allegations contained within Bandaries' petition and amended petition (including those allegations of legal malpractice) pertain to Elliott's actions/inactions while acting in his professional capacity as a lawyer. As such, Elliott maintained that his professional liability insurer had a duty to defend him against such claims. In response to Elliott's petition, Continental filed a motion for summary judgment on July 5, 2005. Continental argued that the litigation between Bandaries and Elliott involved a fee dispute, and as such, Continental contended that such litigation fell outside of the coverage provided by the professional liability policy.
On November 21, 2005, the trial court denied Continental's motion for summary judgment, and in its written reasons for said judgment, the trial court found:
After reviewing the record and the arguments of the parties, the Court finds that there are questions of fact which preclude the granting of the motion. Clearly there is a question as to whether or not the language of the policy itself would allow for [Continental] to defend the plaintiff in a suit where the plaintiff has the potential [to] incur certain costs that his former business associate incurred as a result of the plaintiff's negligence in allowing one of their client's claims to prescribe. The language in the policy defines legal services as services performed by the insured for others as a lawyer. The policy further provides that the company shall have the right and duty to defend in the insured's name and on the insured's behalf if any of the allegations of the claim are groundless, false, or fraudulent. The policy excludes coverage for any claim arising out of any dishonest, fraudulent, criminal or malicious act or omission by an insured. However, the policy goes on to state that [Continental] shall provide an insured with a defense of such a claim unless or until the dishonest, fraudulent, criminal or malicious act or omission has been determined by any trial verdict, court ruling, regulatory ruling or legal admission. The "omission" perpetrated by Elliott, allowing the Ring case to prescribe, falls within the purview of omissions as stated in the policy thereby triggering [Continental's] duty to defend.[4]
Continental filed a writ application with the First Circuit Court of Appeal; however, on May 16, 2006, the First Circuit Court of Appeal, in a 2-to-1 decision, denied Continental's writ application. Thereafter, Continental sought review from this Court, and we granted its writ application on October 6, 2006.

LAW AND DISCUSSION
A. Continental's Duty To Defend
Continental avers that the trial court erred in refusing to grant its motion for summary judgment, as Continental argues *1250 that the insurance policy in question clearly does not provide coverage to Elliott under the instant circumstances. Furthermore, Continental asserts that its duty to defend Elliott in the underlying litigation was never "triggered," as was suggested by the trial court. With respect to an insurer's duty to defend its insured(s), it is well-settled that an insurer's duty to defend is much broader in scope than the insurer's duty to provide coverage.[5] Even the language of the policy issued by Continental in the instant case recognized this well-settled notion, as the contract provided that "[t]he Company shall have the right and duty to defend in the Insured's name and on the Insured's behalf a claim covered by this Policy even if any of the allegations of the claim are groundless, false or fraudulent."[6] In Steptore v. Masco Const. Co., Inc., 93-2064 (La.8/18/94); 643 So.2d 1213, this Court stated:
The insurer's duty to defend suits brought against its insured is determined by the allegations of the plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. Meloy v. Conoco, Inc., 504 So.2d 833, 838 (La.1987); American Home Assurance Co. v. Czarniecki, 255 La. 251, 230 So.2d 253 (1969); Leon Lowe & Sons, Inc. v. Great American Surplus Lines Ins. Co., 572 So.2d 206 (La.App. 1st Cir.1990); Benoit v. Fuselier, 195 So.2d 679 (La. App. 3d Cir.1967). Accordingly, the insurer's obligation to defend suits against its insured is generally broader than its obligation to provide coverage for damage claims. Czarniecki, supra 230 So.2d at 259. Thus, if, assuming all of the allegations of the petition to be true, there would be both coverage under the policy and liability of the insured to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit. Id. An insured's duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy. Meloy, supra.[7]
Thus, we must look at Bandaries' pleadings against Elliott in order to ascertain whether Continental had a duty to defend.
It appears that one particular paragraph in Bandaries' amended pleading has set off the instant litigation. That paragraph, which we referenced earlier in this opinion, says, in pertinent part:

At no time did Howard P. Elliott, Jr. inform plaintiff, or his associates that he had allowed Ring's cause of action to prescribe while he represented Ring. Ring's cause of action, a citation for carrying an oversized load, took place on March 9, 2000, with the citation providing that Ring, to preserve his rights, had to file suit with in [sic] "90 days" of this date or on or about June 9, 2000. Plaintiff would not have accepted this case if he had known that Howard P. Elliott, Jr. had allowed the matter to prescribe.[8]
Elliott argues that this above-referenced allegation activated Continental's duty to defend, as Elliott points out that he has been accused of legal malpractice. Elliott suggests that the definitions incorporated within the professional liability policy provide for coverage in cases exactly like the *1251 case at hand. Thus, we must now look at the terms of this insurance contract in order to determine whether a duty to defend is countenanced.
1. Terms of the Policy
The insurance contract, entitled "Lawyers Professional Liability Policy," contains the following relevant terms and/or definitions, which in pertinent part provide:

Coverage: The Company agrees to pay on behalf of the Insured all sums in excess of the deductible that the Insured shall become legally obligated to pay as damages and claim expenses because of a claim that is both first made against the Insured and reported in writing to the Company during the policy period by reason of an act or omission in the performance of legal services by the Insured or by any person for whom the Insured is legally liable. . . . [9]

Defense: The Company shall have the right and duty to defend in the Insured's name and on the Insured's behalf a claim covered by this Policy even if any of the allegations of the claim are groundless, false or fraudulent. The Company shall have the right to appoint counsel and to make such investigation and defense of a claim as is deemed necessary by the Company. If a claim shall be subject to arbitration or mediation, the Company shall be entitled to exercise all of the Insured's rights in the choice of arbitrators or mediators and in the conduct of an arbitration or mediation proceeding.[10]

Claim: "Claim" means a demand received by the Insured for money or services arising out of an act or omission, including personal injury, in the rendering of or failure to render legal services. A demand shall include the service of suit or the institution of an arbitration proceeding against the Insured.[11]

Legal Services: "Legal services" mean:
1. those services performed by an Insured for others as a lawyer, arbitrator, mediator, title agent or as a notary public. Any title agency or company, on whose behalf the Insured acts as title agent or designated issuing attorney, is not an Insured under this Policy;
2. those services performed by an Insured as an administrator, conservator, receiver, executor, guardian, trustee or in any other fiduciary capacity.[12]
Elliott maintains that the aforementioned definitions and terms support his contention that the policy covers him in the underlying litigation with Bandaries. Elliott argues that, pursuant to the terms of the insurance contract, he is an insured who has received a demand for money arising out of an alleged "act or omission . . . in the rendering of or failure to render legal services,"[13] (i.e., the allegation that Elliott allowed a client's action to prescribe). Elliott argues that Bandaries' claim, that Bandaries "would not have accepted this case if he had known that Howard P. Elliott, Jr. had allowed the matter to prescribe,"[14] is clearly within the sphere of "malpractice claims" for which Continental has a duty to defend under this policy.
*1252 On the other hand, Continental argues that the terms and definitions of the insurance policy are clear and unambiguous, and as such, the policy distinctly precludes coverage under the facts of the instant matter. Further, Continental contends that such a preclusion of coverage obviates Continental's duty to defend. Continental argues that Elliott was never Bandaries' attorney; therefore, Continental maintains that Elliott did not perform "legal services" for Bandaries. Continental asserts that the underlying litigation between Bandaries and Elliott is merely a dispute over fees  as opposed to a malpractice claim  and is, therefore, not covered by the professional liability policy. Continental points out that there is not a great deal of Louisiana jurisprudence addressing the type of situation currently before this Court, and thus, Continental cites several cases from foreign jurisdictions for the general proposition that malpractice insurance does not cover fee dispute matters. However, in this case currently before us, a careful review of the pleadings propounded by Bandaries leads us to surmise that Continental's duty to defend was never "triggered."
2. Bandaries' Pleadings Against Elliott
Under the instant liability policy, coverage is provided if there is "a claim that is both first made against the Insured and reported in writing to the Company during the policy period by reason of an act or omission in the performance of legal services by the Insured. . . ."[15] In its written reasons for judgment, the trial court concluded that "[t]he `omission' perpetrated by Elliott, allowing the Ring case to prescribe, falls within the purview of omissions as stated in the policy thereby triggering [Continental's] duty to defend."[16] However, in actuality, the "omission" alleged by Bandaries in his pleadings is not the omission of providing legal services to Mr. Ring, but rather, the omission alleged is Elliott's failure to inform Bandaries that Mr. Ring's case had prescribed.[17] Bandaries is claiming that he suffered damages by not knowing that the case was prescribed, as opposed to claiming that he suffered damages as a result of Elliott's alleged malpractice itself.
We recognize the well-settled notion that "[a]n insured's duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy."[18] Further, the policy in question provides that "[t]he Company shall have the right and duty to defend in the Insured's name and on the Insured's behalf a claim covered by this Policy even if any of the allegations of the claim are groundless, false or fraudulent."[19] However, the pleadings in the instant matter do not reveal a possibility of liability under this policy, as there is not a claim that would be covered by this policy. As we have already determined, the pleadings against Elliott contain an allegation suggesting that Elliott fraudulently induced Bandaries to enter into an *1253 attorney-client agreement with Mr. Ring.[20] In this case, the nature of the "fraudulent inducement" was that of failing to provide crucial information  an omission of information  about the status of client's cause of action. Because this policy states that a "claim" is one that arises "out of an act or omission . . . in the rendering of or failure to render legal services,"[21] we find that Continental did not have a duty to defend Elliott in the underlying litigation.
B. Denial of Continental's Motion for Summary Judgment
As we previously discussed, the trial court, in its written reasons for judgment, concluded:
After reviewing the record and the arguments of the parties, the Court finds that there are questions of fact which preclude the granting of the motion. Clearly there is a question as to whether or not the language of the policy itself would allow for [Continental] to defend the plaintiff in a suit where the plaintiff has the potential [to] incur certain costs that his former business associate incurred as a result of the plaintiff's negligence in allowing one of their client's claims to prescribe.[22]
Continental avers that the trial court erred in denying its motion for summary judgment, as Continental contends that there are no "questions of fact" regarding the language of the policy such that summary judgment would be an inappropriate "vehicle" for resolving the issue of policy coverage. Further, Continental maintains that the insurance policy in question is very clear with regard to what actions are covered by said policy.
In Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94); 634 So.2d 1180, this Court discussed the general nature of insurance contracts, as well as the applicability of summary judgments when resolving matters of insurance coverage. We found:

A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits submitted, if any, show there is no genuine issue of material fact such that the mover is entitled to judgment as a matter of law. The burden is on the mover to establish that no material fact issues exist. Only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law on the facts before the court is a summary judgment warranted. Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate.
An insurance policy is a contract between the parties and should be construed employing the general rules of *1254 interpretation of contracts set forth in the Louisiana Civil Code. The parties' intent, as reflected by the words of the policy, determine the extent of coverage. Words and phrases used in a policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Where the language in the policy is clear, unambiguous, and expressive of the intent of the parties, the agreement must be enforced as written. However, if after applying the other rules of construction an ambiguity remains, the ambiguous provision is to be construed against the drafter and in favor of the insured.
The purpose of liability insurance is to afford the insured protection from damage claims. Policies therefore should be construed to effect, and not to deny, coverage. Thus, a provision which seeks to narrow the insurer's obligation is strictly construed against the insurer, and, if the language of the exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied.

It is equally well settled, however, that subject to the above rules of interpretation, insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy. As this court stated in Commercial Union Insurance Co. v. Advance Coating Co., 351 So.2d 1183, 1185 (La.1977), quoting Muse v. Metropolitan Life Insurance Co., 193 La. 605, 192 So. 72 (1939):

The rule of strict construction does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists, nor does it authorize the court to make a new contract for the parties or disregard the evidence as expressed, or to refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties. . . . [23]
Thus, for summary judgment to be warranted in the case at hand, we must conclude that there is "no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded."[24]
We are able to utilize our previous analysis of Continental's "duty to defend," in our efforts to determine whether a reasonable interpretation of this policy would support a finding of coverage. As we stated earlier, Bandaries' pleadings include an allegation that information was withheld by Elliott (i.e., the knowledge that Mr. Ring's case had prescribed), which, in turn, induced Bandaries to enter into an attorney-client contract with Mr. Ring. Bandaries further alleged that Elliott allowed Mr. Ring's cause of action to prescribe. However, the inclusion of this allegation of malpractice does not, in and of itself, trigger Continental's duty to defend, nor does it suggest that coverage would be warranted.
*1255 First, this policy defines "legal services" as "those services performed by an Insured for others as a lawyer, arbitrator, mediator, title agent or as a notary public."[25] The record before this Court does not intimate that Elliott ever performed "legal services" for Bandaries. Second, the policy defines a "claim" as "a demand . . . arising out of an act or omission . . . in the rendering of or failure to render legal services."[26] Elliott did not fail to render legal services for Bandaries, but rather, Bandaries alleged that Elliott failed to render legal services for Mr. Ring. Bandaries' assertion, that Elliott "malpracticed" by allowing Mr. Ring's cause of action to prescribe, is merely descriptive of the type of information that Elliott allegedly withheld from Bandaries. We do not find that a "claim," as defined by this policy, exists. Third, by the terms of its policy, Continental was required to defend those claims  even fraudulent claims  covered by the policy. Because we do not find that a "claim" exists, there is no duty to defend. Lastly, the policy guaranteed coverage for those claims Elliott became "legally obligated to pay . . . because of a claim that is both first made against the Insured and reported in writing to the Company during the policy period by reason of an act or omission in the performance of legal services."[27] In accordance with the terms of this insurance contract, there is no "omission of legal services," nor is there a "claim," and thus, Continental would not be required to provide coverage to Elliott under these circumstances.[28] Accordingly, we cannot find a reasonable interpretation of this policy that would support a finding of coverage, and the trial court erred in failing to grant Continental's motion for summary judgment.

CONCLUSION
The allegations contained within the pleadings filed against Elliott did not "trigger" Continental's duty to defend. Bandaries' claim that Elliott committed malpractice against a third person does not fall within the scope of protection provided by this insurance contract. Further, we cannot find any "questions of fact" regarding the terms of this policy which would preclude the granting of summary judgment in favor of Continental, as the policy's definitions/terms pertaining to coverage are clear and unambiguous. Accordingly, for the foregoing reasons, the trial court's denial of summary judgment is reversed and summary judgment is hereby granted in favor of Continental.
REVERSED.
CALOGERO, C.J., dissents and assigns reasons.
JOHNSON, J., concurs.
WEIMER, J., concurs in the result.
CALOGERO, Chief Justice, dissenting.
I respectfully dissent from the majority's holding that summary judgment was appropriate in this case where the insurer, Continental Casualty Company, claims it does not have a duty to defend its insured, Howard Elliot, on the allegations of legal malpractice asserted in the pleadings filed by Madro Bandaries. As the majority notes, for summary judgment in its favor the defendant insurer must establish that there is no reasonable interpretation of the policy under which coverage could be afforded, *1256 when applied to the undisputed material facts shown by the evidence supporting the motion. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180. In my view, the policy could reasonably be interpreted to cover the act or omission by Mr. Elliot as alleged by Mr. Bandaries, i.e., allowing the Ring case to prescribe thereby causing Mr. Bandaries monetary damages. The policy does not limit the act or omission to legal services to any particular person and the duty to defend exists even if the allegations are eventually proven to be groundless, false, or fraudulent. Accordingly, I disagree with the majority's conclusion on this showing that summary judgment finding there is no duty to defend was supported by the policy language and the facts as established by the evidence supporting the motion for summary judgment.
NOTES
[1] While the attorneys agreed to work on several cases together, they have never been affiliated as legal partners, nor have they worked together at the same law firm.
[2] R. at 45 (citations omitted).
[3] R. at 70.
[4] Def.'s Br., Appendix "I" (alteration in original).
[5] See Suire v. Lafayette City-Parish Consol. Government, 04-1459 (La.4/12/05); 907 So.2d 37, 51-52.
[6] R. at 71 (alteration in original) (emphasis added).
[7] Steptore v. Masco Const. Co., Inc., 93-2064 (La.8/18/94); 643 So.2d 1213, 1218 (emphasis added).
[8] R. at 45 (emphasis added).
[9] R. at 70.
[10] R. at 71.
[11] R. at 74.
[12] R. at 76.
[13] R. at 74.
[14] R. at 45 (emphasis added).
[15] R. at 70 (emphasis added).
[16] Def.'s Br., Appendix "I" (alteration in original).
[17] "At no time did Howard P. Elliott, Jr. inform plaintiff, or his associates that he had allowed Ring's cause of action to prescribe while he represented Ring. . . . Plaintiff would not have accepted this case if he had known that Howard P. Elliott, Jr. had allowed the matter to prescribe." R. at 45.
[18] Steptore v. Masco Const. Co., Inc., 93-2064 (La.8/18/94); 643 So.2d 1213, 1218 (alteration in original) (emphasis added).
[19] R. at 71 (emphasis added).
[20] See LA. CIV.CODE art.1953, which provides:

Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.
[21] R. at 74 (emphasis added).
[22] Def.'s Br., Appendix "I" (alteration in original) (emphasis added).
[23] Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94); 634 So.2d 1180, 1182-83 (citations omitted) (footnotes omitted) (emphasis added).
[24] Id. at 1183.
[25] R. at 76.
[26] R. at 74.
[27] R. at 70.
[28] This Court notes that Continental is defending Elliott in a malpractice suit brought by Mr. Ring.