# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-821


**DOROTHY BAHETH, ET AL.**

**VERSUS**

**LAFAYETTE PARISH SCHOOL SYSTEM, ET AL.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2011-7238
HONORABLE PATRICK L. MICHOT, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## PHYLLIS M. KEATY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Phyllis M. Keaty, John E. Conery, and Van H. Kyzar, Judges.


**AFFIRMED.**


John W. Milton
Attorney at Law
Post Office Box 91362
Lafayette, Louisiana  70509
(337) 232-8054
Counsel for Plaintiff/Appellant:
     Dorothy Baheth, on behalf of her minor child,
     Sharntii Baheth

Tonya R. Smith
Kathy S. Boudreaux
Brenda L. Mistrot
Smith & Boudreaux, LLC
200 Travis Street, Suite 103
Lafayette, Louisiana  70503
(337) 504-7765
Counsel for Defendants/Appellees:
     Lafayette Parish School System
     Lafayette Parish School Board

**KEATY, Judge.**

Plaintiff/Appellant, Dorothy Baheth, on behalf of her minor child, appeals the trial court's grant of summary judgment in favor of Defendant/Appellee, Lafayette Parish School Board. For the following reasons, the trial court's judgment is affirmed.

## FACTS AND PROCEDURAL HISTORY

In this personal injury matter, the minor child, Sharntii "Darius" Baheth (Darius), allegedly sustained injuries on December 17, 2010, during a school-sponsored field trip to a movie theater in Lafayette, Louisiana. Darius, who was thirteen years old at the time, was a student at Paul Breaux Middle School and was enrolled in an Individualized Education Plan (IEP) because of his medical diagnosis of autism. His IEP enabled him to participate in Community Based Instruction (CBI) activities with students without exceptionalities, which included participating in the field trip at issue in this case. The record reveals that as the teachers and students exited the bus to cross the street to the movie theater, Darius began running around outside. His teachers grabbed his hands and escorted him across the street during which time he attempted to run away. He then became physically violent. To prevent him from injuring himself or others, Darius's teachers placed him in a two-person restraint. Darius was thereafter given his medication and was able to watch the movie. Ms. Baheth alleges that Darius suffered injuries because of the incident.

Ms. Baheth, on Darius's behalf, filed a Petition for Damages against the Lafayette Parish School Board (the Board) for "bodily injuries and damages" arising from the field trip. She alleged that the injuries occurred when restraining gear was placed on Darius. She also alleged that the teachers failed to timely

administer his medication. The Board filed an answer and a Motion to Compel, which the trial court granted on May 28, 2014.

The Board subsequently filed the instant Motion for Summary Judgment, alleging that it was immune from suit based upon the Educational Opportunities for Students with Exceptionalities (EOSE), La.R.S. 17:1941-1947. Alternatively, the Board alleged that no duty was breached and that Darius was not injured during the field trip. Ms. Baheth filed an opposition memorandum. Following a hearing on April 3, 2017, and pursuant to a written judgment dated April 24, 2017, the trial court granted summary judgment in favor of the Board, dismissing Ms. Baheth's suit with prejudice. Ms. Baheth appealed.

On appeal, Ms. Baheth alleges the following assignments of error:

I.    The trial court erred in not reviewing plaintiff-appellant's brief in opposition to summary judgment, prior to hearing, and ruled from the bench after declaring that he had not done so.

II.   The trial court erred in finding no material issue of fact as the record of the hearing established multiple issues of material fact with regards to liability and damages.

## STANDARD OF REVIEW

"Appellate courts review summary judgments *de novo* under the same criteria that govern the district court's consideration of whether summary judgment is appropriate." *Elliott v. Cont'l Cas. Co.*, 06-1505, p. 10 (La. 2/22/07), 949 So.2d 1247, 1253 (quoting *Reynolds v. Select Props., Ltd.*, 93-1480 (La. 4/11/94), 634 So.2d 1180). "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).[1]

---

[1] We note that La.Code Civ.P. art. 966 was amended by 2015 La. Acts No. 422, § 1, and its provisions became effective on January 1, 2016. This matter is considered applying the

2

**I.    First Assignment of Error**

In her first assignment of error, Ms. Baheth contends that the trial court erred in not reviewing her brief in opposition to summary judgment prior to the hearing and in ruling from the bench after declaring that it had not done so. In support, she asserts that the trial court, "upon memory of counsel during the docket call," stated that it "did not review" Ms. Baheth's brief prior to the hearing and proceeded "to listen to argument and ruled from the bench." Ms. Baheth contends that the trial court failed to "properly consider all evidence," some of which was attached to her opposition memorandum.

The minutes of the trial court reveal that counsel for both sides were present and orally presented their arguments. The minutes state, in pertinent part: "After hearing oral arguments, the Court stated its oral reasons for ruling and granted the motion." The transcript of the hearing reveals the following:

> THE COURT:  Thank you.  The Court notes that the incident took place December 17, 2010, about six-and-a-half years ago.  The plaintiffs had adequate time to develop through any kind of discovery the case and upon the evidence presented the court finds that there is no genuine issue of material fact and will grant the motion for summary judgment.  Plaintiff will be cast with cost.

The foregoing ruling was memorialized in the trial court's written judgment, dated April 24, 2017, wherein it states that it granted the Board's motion for summary judgment after "having considered the entire record, including but not limited to the pleadings, the memoranda and exhibits attached thereto submitted by the parties, the law, evidence, and argument of counsel[.]" According to the Rule

---

provisions of the Louisiana Code of Civil Procedure as it existed at the time of the trial court's consideration. *See* 2015 La. Acts. No. 422, § 2, which states: "The provisions of this Act shall not apply to any motion for summary judgment pending adjudication or appeal on the effective date of this Act."

9.5 Certificate in the record, which is dated April 13, 2017, Ms. Baheth had no opposition to the proposed judgment. As such, we find that the trial court did not err in this regard, and Ms. Baheth's first assignment of error is without merit.

## II.     Second Assignment of Error

In her second assignment of error, Ms. Baheth contends that the trial court erred as the record of the hearing established multiple issues of material fact regarding liability and damages. She contends that Darius sustained head, face, and lower extremity injuries when restraining gear was placed upon him by his teacher, Katie Daire.[2] Ms. Baheth alleges that Darius fell onto the ground when he tripped out of the restraining gear. She further asserts that the Board breached its duty by failing to timely administer his medication.

In opposition, the Board asserts immunity from damages based upon the EOSE. According to the EOSE, it is the duty of the state and local educational agencies "to provide a free appropriate public education in the least restrictive environment to every student with an exceptionality, ages three through twenty-one, who is a resident therein." La.R.S. 17:1941. The procedural safeguards employed under the EOSE are governed by La.R.S. 17:1946(C), as follows:

> (1) No person, who is an employee of a public school system, or his employer, who in good faith renders school health services and medical services to students with exceptionalities which are required by state or federal law, shall be liable for any civil damages as a result of any act or omission in rendering the care or services required.
>
> . . . .
>
> (3) The provisions of this Section shall not exempt from liability those individuals who intentionally or by grossly negligent acts or omissions cause damages to a student with an exceptionality or other individual participating in a special education program for individuals with exceptionalities.

---

[2] Katie Daire's full name is Katie Daire Santangelo as per her affidavit in the record. For clarity, we will refer to her as "Ms. Daire" throughout the remainder of this opinion.

4

A "student with an exceptionality" is defined as: "[A] student with a disability . . . who is evaluated according to state and federal regulation or policy and is deemed to have . . . autism, [] and as a result requires special education and related services." La.R.S. 17:1942(B).

Relying upon the EOSE's definitions, the Board contends that Ms. Baheth failed to show or allege specific facts that it or any of its employees or representatives acted with the intent to harm Darius or acted with gross negligence. The Board argues that it did not breach any duty which would render it liable for damages.

On review, the issue is whether the teachers' actions during the field trip constitute gross negligence or intent to harm. In that regard, "Louisiana courts use a duty-risk analysis in negligence cases to determine whether liability exists under the facts of a particular case." *Cormier v. Albear*, 99-1206, p. 6 (La.App. 3 Cir. 2/2/00), 758 So.2d 250, 254. Under this analysis, a plaintiff is required to prove the following five elements:

> (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages.

*Christy v. McCalla*, 11-366, pp. 8-9 (La. 12/6/11), 79 So.3d 293, 299. "The threshold issue in any negligence action is whether the defendant owed the plaintiff a duty, and whether a duty is owed is a question of law." *Hanks v. Entergy Corp.*, 06-477, p. 21 (La. 12/18/06), 944 So.2d 564, 579. "Whether the defendant breached that duty and whether that breach was a cause in fact of plaintiff's injuries are factual questions to be determined by the factfinder." *Id*. at 580.

In Louisiana, "[t]emporary custodians of children, such as school personnel . . ., are charged with the highest degree of care towards the children left in their custody; supervisors must follow a standard of care commensurate with the age of the children under the attendant circumstances." *Glass v. Magnolia Sch., Inc.*, 01-1209, p. 19 (La.App. 5 Cir. 3/13/02), 815 So.2d 143, 154, *writ denied*, 02-1048 (La. 6/7/02), 818 So.2d 776. Moreover, "supervisors at schools are not absolute insurers of the children's safety" and "[l]iability is imposed only where there is a causal connection between the lack of supervision and the accident that could have been avoided by the exercise of the required degree of supervision." *Id.*

To show that it exercised the required degree of supervision, the Board offered into evidence affidavits of its employee teachers. In that regard, Ms. Daire, a special education teacher who supervised Darius on the field trip, attested that upon arriving at the movie theater and exiting the bus, Darius "began running into a public parking lot and refus[ed] an employee assistant's hand to help him cross the street." She noted that when Darius began running near the street, she and Rachel Graham caught him by the hands and escorted him across the street. According to Ms. Daire's affidavit, as they were escorting Darius, he attempted to break loose and became "violent by kicking, pinching, biting, and head-butting" her and Ms. Graham. She revealed that although Darius was not placed "in any restraining vest or any other restraining device," he "was placed in a two-person restraint and was screaming out profanities and using aggressive language." According to Ms. Daire's statement, Darius was restrained until Kimberly Edwards could administer his medication. She attested that Darius did not fall nor was he thrown to the ground. Ms. Daire stated that Darius did not suffer or complain of any injury. She stated that the incident occurred from "11:15 a.m. until 11:45 a.m.

6

when his medication was administered by" Ms. Edwards. Ms. Daire indicated that she sustained multiple bruises during the incident.

Ms. Daire's affidavit is supported by Ms. Edwards's and Ms. Graham's affidavits. Ms. Graham, a paraprofessional employed by the Board, attested that as they exited the bus, Darius "began to run around and break away from the group." Ms. Graham advised that she attempted to take his hand and escort him across the street when Darius broke away and got near the street, refusing to return to the group. According to Ms. Graham, although Darius attempted to get away by resisting and screaming, she and Ms. Daire grabbed his hands to walk him across the street. Ms. Graham noted that Darius became violent, so she and Ms. Daire placed him "in a two-person restraint" in accordance with school board policies. He subsequently kicked, head-butted, and bit Ms. Daire. Ms. Graham stated that she attempted to get behind Darius to control his kicking, but he "used his hips and rear to shove himself into [her] abdomen resulting in several small bruises."

Ms. Edwards attested that she witnessed Darius kicking both Ms. Daire and Ms. Graham. In Ms. Edwards's affidavit, she advised that she was the paraprofessional in charge of administering medicine on the day in question. Ms. Edwards revealed that Darius exited the bus and "refused to let an adult hold his hand, which was done to insure" his safety. She noted that when Ms. Graham attempted to get Darius to hold her hand, he ran from her towards the street. According to Ms. Edwards, Ms. Graham grabbed Darius and walked him across the street with Ms. Daire's assistance. She revealed that Darius "kicked, screamed and yelled" while approaching the theater. Ms. Edwards indicated that Ms. Graham then held Darius's arm while she administered his medication. Ms. Edwards stated that Darius never fell nor was he thrown or forced to the

7

ground. She attested that Darius was not "placed in any restraining vest nor any other type of restraining device." According to Ms. Edwards's affidavit, Darius did not suffer from nor complain of any injury. She revealed that Darius was scheduled to receive his medication between 11:00 a.m. and 12:00 p.m. daily. Ms. Edwards attested that the incident occurred from "approximately 11:15 a.m. to 11:45 a.m., when [she] administered the child his medication as scheduled."

The record also contains the Board's medication order dated August 8, 2010, which was prepared by his pediatrician, Dr. Myriam Abdel-Sayed. Therein, Dr. Abdel-Sayed advised that Darius was diagnosed with autism and attention deficit hyperactivity disorder (ADHD) and was prescribed Ritalin. She noted that his medication needed to be administered at lunchtime and at 3:00 p.m. daily. We find that the medication order along with the teachers' affidavits reveal that Darius's medicine was timely administered during the field trip.

To show that his medication was not timely given, Ms. Baheth offered into evidence a medical record from Dr. Abdel-Sayed dated January 19, 2011. Therein, Dr. Abdel-Sayed noted that Ms. Baheth "thinks" Darius's teacher failed to timely administer his medicine. We find that this medical record is insufficient to show that Darius's medication was not timely given.

Based upon the evidence in the record, Darius's teachers used the required degree of supervision to ensure his safety. The evidence supports a finding that his teachers did not act with the intent to harm Darius with gross negligence. We find that no duty was breached and as such, the Board is not liable for Darius's alleged damages. We, likewise, find that the Board is immune from liability under La.R.S. 17:1941-1947.

8

Even if the Board breached a duty and was not immune under the EOSE, the medical records submitted into evidence fail to support Ms. Baheth's claim that Darius sustained a head injury after falling to the ground. The only way for Ms. Baheth to prove damages is by "proving a causal relationship between the accident and the injuries complained of." *Am. Motorist Ins. Co. v. Am. Rent-All, Inc.*, 579 So.2d 429, 433 (La.1991). "[T]he test for determining the causal relationship between the accident and subsequent operations is whether the plaintiff proved through medical testimony that it was more probable than not that subsequent operations were caused by trauma suffered in the accident." *Mart v. Hill*, 505 So.2d 1120, 1128 (La.1987). Ms. Baheth's attempt to show a causal connection is based upon a Lafayette Parish School System Incident Report prepared by Ms. Daire which states that Darius tripped out of a restraint. Ms. Baheth, however, cites no statutory law or jurisprudence which shows that tripping out of a restraint equates to falling to the ground. Moreover, three unrefuted affidavits in the record indicate that Darius did not fall to the ground.

In support of her claim of a connection between the incident and Darius's alleged head injury, Ms. Baheth introduced medical records from the Pediatric Group of Acadiana, LLC (Pediatric Group) dated January 4, 2011, wherein Darius presented to refill medications and/or change the dosage. Darius thereafter went to his dentist, Dr. S. Troy Miller, on January 13, 2011 with complaints of pain. According to Dr. Miller's dental records, an x-ray was performed on Darius and Dr. Miller noted: "Dr. Miller informed mom that 12-year molars are pushing in [and] that causes pressure," and patient "could have toothaches, headaches, [and] earaches."

On January 14, 2011, possible head trauma is documented in a Baton Rouge General Hospital Emergency Room medical record. It reveals that Darius's mother requested that he be evaluated for a head injury resulting from her son bumping heads with a caregiver at school on December 17, 2010, which resulted in headaches and mouth pain. The medical record notes that the "[m]other reports receiving a report from" Darius's school "which indicated that he 'butted his head' while having an aggressive episode 12/17/10." According to the medical record, Darius's history was provided by his mother. A physical exam given to Darius in conjunction with his visit revealed that he suffered no acute distress. Darius was diagnosed with autism, rhinitis, and an "[a]lleged [h]ead [i]njury." The discharge instructions given to Darius indicates that he "suffered a minor head injury, also called a concussion." We find that the discharge instructions simply used boilerplate language and do not support a finding that he suffered a concussion considering the emergency room medical record which indicates that he suffered an alleged head injury. Additionally, a Baton Rouge General Medical Center invoice for payment for services rendered on January 14, 2011, is silent with respect to a head injury; rather, it indicates "chronic rhinitis" and "dental disorder" next to "diagnosis."

On January 19, 2011, Darius presented to Dr. Abdel-Sayed for a follow-up visit arising from an incident on a "school trip on 12/17/10." Dr. Abdel-Sayed noted that Ms. Baheth "thinks" Darius's teacher failed to timely administer his medicine. Ms. Baheth reported therein that Darius was complaining about his head. Dr. Abdel-Sayed's assessment was "headache (trauma)," and she ordered a computed tomography (CT) scan of Darius's head. The CT scan, which was

performed on January 28, 2011, revealed that Darius suffered from acute sinusitis and there was "no evidence of an acute intracranial process."

After reviewing the medical records in the record, we find they fail to show any objective findings which would causally connect the field trip incident with Darius's alleged head or foot injuries. Many of the medical records are void of any mention of a head injury sustained following the field trip. The medical records that do indicate an alleged head injury also note that Darius's medical history was provided by Ms. Baheth. The same medical records indicate that this "history" provided by Ms. Baheth varied frequently and there is a total lack of evidence in the record to support these accounts, such as they do not create any issue of material fact that would defeat summary judgment herein. Additionally, the objective medical evidence provided by the CT scan and the MRI fail to connect the incident and the alleged head injury. Accordingly, we find that Ms. Baheth has failed to prove a causal relationship between the incident and Darius's alleged injuries. The trial court did not err in this regard, and this assignment of error is without merit.

## DECREE

The trial court's grant of summary judgment in favor of Defendant/Appellee, Lafayette Parish School Board, is affirmed. All costs associated with this appeal are assessed to Plaintiff/Appellant, Dorothy Baheth, on behalf of her minor child, Sharntii "Darius" Baheth.

**AFFIRMED.**

11