# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 16-172

JUDE SAVOIE

VERSUS

CALCASIEU PARISH WARD FOUR
FIRE DISTRICT NO. 2, PARISH OF
CALCASIEU, AND CALCASIEU PARISH
POLICE JURY

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2013-1402
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

JAMES T. GENOVESE
JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, James T. Genovese, and John E. Conery, Judges.

REVERSED IN PART AND RENDERED;
AFFIRMED IN PART; REMANDED.

Kevin L. Camel
Cox Cox Filo Camel & Wilson, LLC
723 Broad Street
Lake Charles, Louisiana 70601
(337) 436-6611
COUNSEL FOR PLAINTIFF/APPELLANT:
    Jude Savoie


Eric W. Roan
Wesley A. Romero
Plauche, Smith & Nieset, L.L.C.
1123 Pithon Street
Lake Charles, Louisiana 70601
(337) 436-0522
COUNSEL FOR DEFENDANT/APPELLANT:
    Calcasieu Parish Ward Four Fire District No. 2


Rachel S. Kellogg
328 Lafayette Street
New Orleans, Louisiana  70130
(504) 522-0011, ext. 24
COUNSEL FOR DEFENDANT/APPELLEE:
    American Alternative Insurance Corporation

**GENOVESE, Judge.**

Before this court are the motions for summary judgment relative to a claim for reimbursement of premiums paid for health insurance benefits. Plaintiff, Jude Savoie, and Defendant, Calcasieu Parish Ward Four Fire District No. 2 (the District), filed motions for summary judgment contending that the District's management liability insurer, Defendant, American Alternative Insurance Corporation (AAIC), provided insurance coverage for the claims asserted by Mr. Savoie against the District. AAIC filed its own motion for summary judgment repudiating coverage. The trial court granted the motion for summary judgment filed by AAIC, denied those filed by Mr. Savoie and the District, and dismissed with prejudice all claims asserted against AAIC by Mr. Savoie and the District. From the trial court's judgment, Mr. Savoie and the District appeal.[1] For the following reasons, we reverse the decision of the trial court granting AAIC's motion for summary judgment denying coverage; we reverse the decision of the trial court denying the motions for summary judgment filed by the District and Mr. Savoie and rule in favor of coverage as it relates to AAIC's duty to defend the District; we render judgment ordering AAIC to defend the District against Mr. Savoie's claims; and, we remand this matter to the trial court for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

This litigation ensued on March 22, 2013, when Mr. Savoie, a former Fire Chief of the District, filed a Petition for Unpaid Employment Benefits and

---

[1]The denial of a motion for summary judgment is an interlocutory judgment from which, ordinarily, an appeal may not be taken. La.Code Civ.P. art. 968. However, when there is also an appeal from a final judgment, i.e., a trial court's grant of summary judgment on the same issue, an interlocutory ruling may also be reviewed by the appellate court. *See Mackmer v. Estate of Angelle,* 14-655 (La.App. 3 Cir. 12/10/14), 155 So.3d 125, *writ denied*, 15-69 (La. 4/2/15), 176 So.3d 1031.

Injunctive Relief against the District.[2]  Mr. Savoie sought reimbursement for monthly payments he made since August 16, 2012 for continued health insurance. According to Mr. Savoie, in August 2008, "the District voted to provide all Fire Department employees, as a benefit of their employment, continued health insurance coverage upon retirement, under the same terms as for current employees and at no cost to the retired employee."

Mr. Savoie contends that when he retired from the District[3] on March 22, 2012, he did so with the understanding that the District would pay his health insurance premiums.  However, months later the District informed Mr. Savoie that, effective August 2012, it would discontinue paying his monthly premiums.  On August 16, 2012, Mr. Savoie elected to continue his health insurance coverage by paying $447.80 per month.  In addition to pursuing reimbursement, Mr. Savoie sought an injunction directing the District "to provide continued health insurance coverage at no cost to [him.]"

The District answered, denying liability.  It also alleged "fraud, failure of consideration, [and] extinguishment of an obligation" as defenses.

Mr. Savoie amended his petition in March 2015 to add AAIC to this suit. Mr. Savoie alleged that AAIC had issued a management liability insurance policy to the District that provided coverage for his claim.

Likewise, the District filed a Cross-Claim against AAIC, alleging AAIC had issued a management liability insurance policy that provides coverage for Mr. Savoie's claims.  Furthermore, the District alleged that AAIC had been put on notice of the litigation in April 2013 and that AAIC wrongfully denied "coverage

---

[2]The Parish of Calcasieu and Calcasieu Parish Police Jury were initially named as Defendants herein; however, both were voluntarily dismissed from these proceedings on April 10, 2013.

[3]The District hired Mr. Savoie as a firefighter in 1995.  In 1996, he became the Fire Chief and served in this capacity until his retirement.

2

under the portfolio policy claiming exclusionary language in the policy prohibited coverage for the claims asserted by [Mr.] Savoie[.]" The District sought "coverage, including indemnity and defense," and "reimbursement for defense costs it accrued" from AAIC "for the claims asserted against [it] by [Mr.] Savoie."

In its answers, AAIC admitted issuing a management liability insurance policy to the District. However, it denied that its policy provided coverage for Mr. Savoie's claims.

Mr. Savoie filed a motion for summary judgment relative to the issues of the District's liability[4] and AAIC's coverage. With regard to coverage, Mr. Savoie averred:

> [AAIC] provides management liability coverage to the Fire District for, *inter alia*, failing to properly administer its employees' access to employee benefit plans, such [as] the health insurance plan provided to District employees. [Mr. Savoie] is entitled to judgment finding that the [AAIC] policy provides coverage for all monetary amounts [which the] District owes [Mr. Savoie], including payment of past premiums, penalties and attorney[] fees.

Mr. Savoie sought judgment finding AAIC's management liability insurance provides coverage for the claims asserted by him against the District.

AAIC filed a cross motion for summary judgment, wherein it asserted that Mr. Savoie's claims against the District fell outside of the coverage provided by the management liability insurance policy because certain policy exclusions applied. AAIC sought a dismissal of all claims asserted against it by Mr. Savoie and the District.

---

[4]The District filed a cross motion for summary judgment relative to the issue of liability. The trial court denied the cross motions finding genuine issues of material fact exist. Liability is not at issue in this appeal.

The AAIC management liability policy issued to the District provides, in relevant part:

**SECTION I. COVERAGES**

**Coverage A.   Insuring Agreement – Liability for Monetary Damages**

1.    We will pay those sums that the insured becomes legally obligated to pay as monetary damages arising out of an "employment practices" offense, an offense in the "administration" of your "employee benefit plans", or other "wrongful act" to which this insurance applies.  We have the right and duty to defend any "suit" seeking those damages.  We may, at our discretion, investigate any such offense or "wrongful act" and settle any "claim" or "suit" that may result.

. . . .

**Coverage B.   Insuring Agreement – Defense Expense for Injunctive Relief**

1.    We will pay those reasonable sums the insured incurs as "defense expense" to defend against an action for "injunctive relief" because of an "employment practices" offense, an offense in the "administration" of your "employee benefit plans", or other "wrongful act" to which this insurance applies.

. . . .

**SECTION II. EXCLUSIONS**

This insurance does not apply under either Coverage A or Coverage B to:

. . . .

i.    **Contracts**
Any amount actually or allegedly due under the terms of any contract for the purchase of goods or services or any payment or performance contract, other than an employment contract.

j.    **Employment Contracts**
Any amount actually or allegedly due under the terms of any contract of employment for a definite term, or as severance pay under any contract of employment.

. . . .

4

l.  **Failure to Maintain Insurance**
    The failure to effect or maintain:
    (1)  Insurance of any kind, including adequate limits of insurance; or
    (2)  Suretyship or bonds.
    This exclusion does not apply to the extent coverage is provided for the "administration" of "employee benefit plans".

m.  **Performance of Employee Benefit Plans**
    Any "employment practices" offense or any offense in the "administration" of "employee benefit plans" arising out of:

    . . . .

    (4)  Failure of the insured or any insurer, fiduciary, trustee or fiscal agent to perform any of their duties or obligations or to fulfill any of their guarantees with respect to the payment of benefits under "employee benefits plans" or the providing, handling or investment of funds;

    . . . .

    (7)  Any claim for benefits that are unlawfully paid or payable to a beneficiary from the funds of an "employee benefit plan".

    . . . .

q.  **Profit, Advantage or Remuneration**
    Any loss, cost or expense based upon or attributable to the insured gaining any profit, advantage or remuneration to which the insured is not legally entitled.

    . . . .

## SECTION VII.  DEFINITIONS

1.  "Administration" means any of the following acts that you do or authorize a person to do:
    a.  Counseling volunteers or employees, other than giving legal advice, on "employee benefit plans";
    b.  Interpreting your "employee benefit plans";
    c.  Handling records for your "employee benefits plans"; and
    d.  Effecting enrollment, termination or cancellation of volunteers or employees under your "employee benefits plans".

5

. . . .

6. "Employee benefit plans" mean group life insurance, group accident or health insurance, profit sharing plans, pension plans, employee stock subscription plans, employee travel, vacation, or savings plans, workers compensation, unemployment insurance, social security and disability benefits insurance, and any other similar benefit program applying to volunteers or employees.

7. "Employment practices" means an actual or alleged improper employment related practice, policy, act or omission involving an actual, prospective, or former volunteer or employee, including:
   a. Failing to hire or refusing to hire;
   b. Wrongful dismissal, discharge, or termination of employment or membership, whether actual or constructive;
   c. Wrongful deprivation of a career opportunity, or failure to promote;
   d. Wrongful discipline of volunteers or employees;
   e. Negligent evaluation of volunteers or employees;
   f. Retaliation against volunteers or employees for the exercise of any legally protected right or for engaging in any legally protected activity;
   g. Failure to adopt adequate workplace or employment-related policies and procedures;
   h. Harassment, including "sexual harassment"; or
   i. Violation of any federal, state or local laws (whether common law or statutory) concerning employment or discrimination in employment.

. . . .

9. "Injunctive Relief" means equitable relief sought through the demand for the issuance of a permanent, preliminary or temporary injunction, restraining order, or similar prohibitive writ against, or order for specific performance by, an insured provided such an action is filed during the policy period.

. . . .

15. "Suit" means a civil proceeding in which damages arising out of an offense of "wrongful act" to which this insurance applies are alleged. . . .

16. "Wrongful act" means any actual or alleged error, act, omission, misstatement, misleading statement, neglect or breaches of duty committed by you in the performance of your operations, including misfeasance, malfeasance, or nonfeasance in the discharge of duties, individually or collectively that

6

results directly but unexpectedly and unintentionally in damages to others.

The District filed a motion for summary judgment relative to the issue of AAIC's coverage, wherein it asserted:

> The District has put AAIC on notice of the claims asserted against [it] by [Mr. Savoie], and . . . has demanded that AAIC provide defense and indemnity to [it] for the claims asserted herein, as AAIC contractually agreed to do by accepting premiums from and insuring the District under the applicable policy. On April 25, 2013, AAIC, through counsel, issued a letter to the District denying coverage under the portfolio policy. The denial of insurance coverage by AAIC was improper, contrary to the policy language, and without merit.

The District sought judgment finding AAIC's management liability insurance policy provides coverage, including indemnity and defense, for Mr. Savoie's claims.

The trial court granted AAIC's motion for summary judgment and, in its written reasons, for judgment declared:

> The District argues that any employee benefits are subject to the Parish's "policies and plan documents" and that its board approved the benefit only because [Mr. Savoie] told them the Parish had given its blessing to the action. The evidence is that Parish approval was critical to the District's decision to offer the benefit. . . . Furthermore, it is undisputed that the Parish immediately rejected the District's attempt to pay [Mr. Savoie's] premium (as a retiree)[,] and Mr. Milner appeared before the board to convey to them that this benefit was not allowed under the Plan. Furthermore, the board's attorney told them that the action was "illegal." . . . As a result, the District withdrew the benefit.

> Contract law operates to vitiate the consent given by the District in 2008 since it was granted under the mistaken belief that the Parish would allow such action. There are at least questions of fact regarding whether the District intended to provide this benefit regardless of the Plan or the Parish's interpretation of the Plan and whether there may or may not be any illegalities involved in allowing the District to pay this benefit.

> *Knecht v. Bd. of Trustees*, [591] So.2d 690 (La. 1991) is distinguishable because the employer's offer was made and acceptance was found when the employees worked overtime without pay. There was no issue about the employer's ability to make the benefit available to the employees.

7

Accordingly, the Motions for Summary Judgment filed by [Mr. Savoie] and the District are denied at this time.

The Motion for Summary Judgment filed by AAIC is granted. The decision by the District to either pay this benefit or not does not represent an insurable risk.

The motions of Mr. Savoie and the District were denied. All claims asserted against AAIC were dismissed with prejudice via Judgment signed on December 16, 2015. Mr. Savoie and the District appeal.

## ASSIGNMENT OF ERROR

The District assigns one error: "The [t]rial [c]ourt committed reversible error when it misinterpreted the language in the AAIC insurance policy, granted AAIC's Motion for Summary Judgment, denied [t]he District's Motion for Summary Judgment on insurance coverage, and dismissed AAIC from the case." Mr. Savoie's position is identical.

## LAW AND DISCUSSION

"Appellate courts review summary judgments *de novo* under the same criteria that govern the district court's consideration of whether summary judgment is appropriate." *Elliott v. Continental Cas. Co.*, 06-1505, p. 10 (La. 2/22/07), 949 So.2d 1247, 1253 (quoting *Reynolds v. Select Props., Ltd.*, 93-1480 (La. 4/11/94), 634 So.2d 1180, 1183). A summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B)(2).[5] "Interpretation of

---

[5] We note that La.Code Civ.P. art. 966 was amended by 2015 La. Acts No. 422, § 1, and its provisions became effective on January 1, 2016. This matter is considered applying the provisions of the Louisiana Code of Civil Procedure as they existed at the time of the trial court's consideration. *See* 2015 La. Acts. No. 422, § 2 which states: "The provisions of this Act shall not apply to any motion for summary judgment pending adjudication or appeal on the effective date of this Act."

an insurance policy ordinarily involves a legal question that can be properly resolved by a motion for summary judgment." *Bernard v. Ellis*, 11-2377, p. 9 (La. 7/2/12), 111 So.3d 995, 1002 (citing *Cutsinger v. Redfern*, 08-2607 (La. 5/22/09), 12 So.3d 945).

> ***Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded.*** . . .
>
> An insurance policy is a contract between the parties and should be construed employing the general rules of interpretation of contracts set forth in the Louisiana Civil Code. The parties' intent, as reflected by the words of the policy, determine the extent of coverage. Words and phrases used in a policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Where the language in the policy is clear, unambiguous, and expressive of the intent of the parties, the agreement must be enforced as written. However, if after applying the other rules of construction an ambiguity remains, the ambiguous provision is to be construed against the drafter and in favor of the insured.
>
> ***The purpose of liability insurance is to afford the insured protection from damage claims. Policies therefore should be construed to effect, and not to deny, coverage. Thus, a provision which seeks to narrow the insurer's obligation is strictly construed against the insurer, and, if the language of the exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied.***
>
> ***It is equally well settled, however, that subject to the above rules of interpretation, insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy.***

*Elliott*, 949 So.2d at 1253-54 (quoting *Reynolds*, 634 So.2d at 1183). "One general and well-established rule is that an 'insurer bears the burden of proving that a loss falls within a policy exclusion.'" *Rodgers v. State Farm*, 15-868, p. 2 (La.

6/30/15), 168 So.3d 375, 376 (quoting *Supreme Servs. & Specialty Co., Inc. v. Sonny Greer, Inc.*, 06-1827, p. 6 (La. 5/22/07), 958 So.2d 634, 639).

An insurer's obligation to defend is distinct from an insurer's obligation to indemnify—"an insurer's duty to defend is much broader in scope than the insurer's duty to provide coverage." *Elliott*, 949 So.2d at 1250. "The insurer's duty to defend suits brought against its insured is determined by the allegations of the plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage." *Id.* (quoting *Steptore v. Masco Const. Co., Inc.*, 93-2064, p. 8 (La. 8/18/94), 643 So.2d 1213, 1218). "An insured's duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy." *Id.* (quoting *Steptore*, 643 So.2d at 1218).

Mr. Savoie's pleadings against the District determine whether AAIC had a duty to defend. According to Mr. Savoie's petition, it is the District's policy to provide health insurance to employees. In July 2008, the District's policy was expanded to provide health insurance to retirees. Mr. Savoie retired from the District in March 2012 with the benefit of the District paying his health insurance premiums. In July 2012, the District eliminated the benefit of providing health insurance to retirees and applied its policy change retroactively against Mr. Savoie. Mr. Savoie's petition alleges that the District breached its duty to him by failing to comply with the policy in effect at the time of his retirement and that he was deprived of his entitlement to health insurance by the District's retroactive application of its policy change.

10

Mr. Savoie and the District[6] argue that Mr. Savoie's allegations fall squarely within a coverage provision found in Section I. of the policy defined as an offense in the "administration" of the District's "employee benefit plans." Mr. Savoie contends he is entitled to funding of health insurance premiums because, when he retired, it was the District's policy to provide this benefit to retirees. The District asserts that the issue in dispute concerns the manner in which it attempted to modify its plan for retirees.

AAIC acknowledges that Mr. Savoie's allegations meet the criteria for being an offense in the "administration" of the District's "employee benefit plans"—a coverage provision found in Section I. of the policy. AAIC relies, instead, upon exclusionary language within the policy to deny coverage. AAIC identifies five separate exclusions within Section II. of the professional liability policy: (i.) Contracts; (j.) Employment Contracts; (l.) Failure to Maintain Insurance; (m.) Performance of Employee Benefit Plans; and, (q.) Profit, Advantage or Remuneration. AAIC specifically urges the "Performance of Employee Benefit Plans" exclusion which bars coverage to the District if its offense was in the "administration" of its "employee benefit plans" arising out of a failure to perform a duty with respect to the payment of benefits. AAIC further argues that the basis for Mr. Savoie's claim is that he was initially deemed eligible for an employee benefit, i.e., payment of health insurance premiums, and that benefit was cancelled and applied retroactively.

The trial court's statement in its written reasons for judgment, "[t]he decision by the District to either pay this benefit or not does not represent an insurable risk[,]" connotes the trial court seemingly agreed with AAIC's

---

[6]The District does not admit liability.

11

characterization. The trial court concluded that the decision to cease paying Mr. Savoie's health insurance premiums is the offense for which the "Performance of Employee Benefit Plans" exclusion applies. We disagree. The offense which instigated Mr. Savoie's lawsuit against the District is the manner in which the District modified its employee benefit plans.

Based upon our de novo review, we find that the trial court erred in granting AAIC's motion for summary judgment on the issue of insurance coverage. A reasonable interpretation of AAIC's management liability insurance policy supports a finding that Mr. Savoie's claims fall within the scope of coverage as it relates to AAIC's obligation to defend the District. The allegations contained within Mr. Savoie's pleadings against the District trigger AAIC's duty to defend the District and suggest that indemnity could be warranted. Accordingly, we reverse, in part, the trial court's judgment denying the motions by Mr. Savoie and the District, and we render judgment for the District and Mr. Savoie insofar as it relates only to AAIC's duty to defend the District.

We find that the scope of coverage as it relates to indemnity is unclear—there remain genuine issues of material fact concerning the manner in which the District modified its employee benefits plan. These genuine issues of material fact preclude summary judgment on the scope of coverage as it relates to indemnity. Accordingly, we reverse the judgment of the trial court granting summary judgment in favor of AAIC and dismissing the claims of Mr. Savoie and the District. We affirm, in part, the judgment of the trial court denying summary judgment filed by Mr. Savoie and the District on the scope of coverage as it relates to indemnity.

12

**DECREE**

For the foregoing reasons, we reverse the judgment of the trial court granting AAIC's motion for summary judgment denying coverage. We reverse the judgment of the trial court denying the motions for summary judgment filed by the District and Mr. Savoie, and we grant the motions of the District and Mr. Savoie only as they relate to AAIC's duty to defend the District. Judgment is hereby rendered ordering AAIC to defend the District against Mr. Savoie's claims in the underlying lawsuit. We remand this matter to the trial court for further proceedings consistent with this opinion. All costs are assessed to Defendant/Appellee, American Alternative Insurance Corporation.

**REVERSED IN PART AND RENDERED;
AFFIRMED IN PART; REMANDED.**

13