# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 16-343

GEORGE RAYMOND WILLIAMS, M.D.

VERSUS

SIF CONSULTANTS OF LOUISIANA, INC.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 09-C-5244-C
HONORABLE ALONZO HARRIS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## JOHN D. SAUNDERS
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, John D. Saunders, and John E. Conery, Judges.

**AFFIRMED.**

**Conery, J., dissents.**

**John S. Bradford**
**William B. Monk**
**Stockwell, Sievert, Viccellio, Clements & Shaddock, L.L.P.**
**P.O. Box 2900**
**One Lakeside Plaza, Fourth Floor**
**Lake Charles, LA 70601**
**(337) 436-9491**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Orthopaedic Surgery, A ProfessionalMedical, LLC**
    **George Raymond Williams, M.D.**

**Charles Thach Curtis  Jr.**
**Gerard George Metzger**
**Attorneys at Law**
**829 Baronne Street**
**New Orleans, LA 70113**
**(504) 581-9322**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Med-Comp USA, Inc.**

**Patrick A. Juneau  Jr.**
**The Juneau Firm**
**Post Office Drawer 51268**
**Lafayette, LA 70505-1268**
**(337) 269-0052**
**COUNSEL FOR OTHER APPELLEE:**
    **Patrick Juneau, Special Master**

**Patrick C. Morrow**
**James P. Ryan**
**Morrow, Morrow, Ryan & Bassett**
**P. O. Box 1787**
**Opelousas, LA 70570**
**(337) 948-4483**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **George Raymond Williams, M.D.**
    **Orthopaedic Surgery, A ProfessionalMedical, LLC**

**Stephen B. Murray**
**Stephen B. Murray, Jr.**
**Arthur M. Murray**
**Nicole A. Murray-Ieyoub**
**Murray Law Firm**
**650 Poydras Street, Ste 2150**
**New Orleans, LA 70130**
**(504) 525-8100**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **George Raymond Williams, M.D.**
    **Orthopaedic Surgery, A ProfessionalMedical, LLC**

**Larry Lane Roy**
**Brown Sims**
**600 Jefferson St., Suite 800**
**Lafayette, LA 70501**
**(337) 484-1240**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Bestcomp, Inc.**

**Randall Kurt Theunissen**
**Allen & Gooch**
**P. O. Box 81129**
**Lafayette, LA 70598-1129**
**(337) 291-1000**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Homeland Ins. Co. of New York**

**Janice Bertucci Unland**
**Rabalais, Unland**
**1404 Greengate Dr., #110**
**Covington, LA 70433-5272**
**(985) 893-9900**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Risk Management Services**

**Steven William Usdin**
**Barrasso, Usdin, Kupperman**
**909 Poydras St., #2400**
**New Orleans, LA 70112**
**(504) 589-9700**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Executive Risk Specialty Ins. Co.**

**Martin A. Stern**
**E. Paige Sensenbrenner**
**Raymond P. Ward**
**Adams & Reese LLP**
**701 Poydras St., Suite 4500**
**New Orleans, LA 70139**
**(504) 581-3234**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Homeland Ins. Co. of New York**

**Thomas A. Filo**
**Somer G. Brown**
**Michael K. Cox**
**Cox, Cox, Filo, Camel & Wilson, L.L.C.**
**723 Broad Street**
**Lake Charles, LA 70601**
**(337) 436-6611**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **George Raymond Williams, M.D.**
    **Orthopaedic Surgery, A ProfessionalMedical, LLC**

**Michael E. Parker**
**Allen & Gooch**
**P. O. Box 81129**
**Lafayette, LA 70598-1129**
**(337) 291-1000**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Homeland Ins. Co. of New York**

**Cynthia J. Thomas**
**Galloway, Johnson, et al.**
**3 Sanctuary Blvd., Suite 301**
**Manderville, LA 70471**
**(985) 674-6710**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **SIF Consultants of Louisiana, Inc.**

**John Mark Fezio**
**Stone, Pigman, et al.**
**546 Carondelet St.**
**New Orleans, LA 70130**
**(504) 581-3200**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Cor Vel Corp.**

**Michael J. Rosen**
**Peter F. Lovato**
**Skarzynksi Black, LLP**
**205 N. Michigan Ave., Ste 2600**
**Chicago, IL 60601**
**(312) 946-4200**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Homeland Ins. Co. of New York**

**Daniel J. Layden**
**Ronald P. Schiller**
**Hangley, Aronchick, Segal**
**One Logan Square, 27th Floor**
**Philadelphia, PA 19103**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Risk Management Services**

**SAUNDERS, Judge.**

This is a class action wherein the plaintiff class filed suit against two different insurance companies under La. R.S. 22:1269. The plaintiff class asserted claims for damages under statute prohibiting certain conduct by preferred provider organization.

The plaintiff class previously moved for and was granted summary judgment against one of the insurance companies. The case settled while that first insurance company's application for writs to our Louisiana Supreme Court was pending. In the settlement, the plaintiff class reserved all rights to pursue any claims against the second insurance company.

The plaintiff class then moved for and was granted a motion for summary judgment against the second insurance company. The trial court granted the motion. The second insurance company appeals this decision.

**FACTS AND PROCEDURAL HISTORY:**

The plaintiff class of medical providers filed suit against Executive Risk Specialty Insurance Company (Executive Risk) and Homeland Insurance Company of New York (Homeland) under the direct action statute. Executive Risk and Homeland had each issued a claims-made errors and omissions policy to CorVel, Corp. (CorVel) during consecutive time periods. Executive Risk issued policies to CorVel for annual periods from October 31, 1999, to October 31, 2005. Homeland issued policies for annual periods from October 31, 2005. CorVel settled with the plaintiff class for failure to comply with the mandatory notice provisions of billing discounts in the Louisiana PPO Act, La.R.S. 40:2203.1.

After the trial court certified the plaintiff class and this court upheld that certification, a motion for partial summary judgment was filed by the plaintiff class against Executive Risk. The trial court granted the motion for partial summary

judgment on the issue of coverage. This court, in *Williams v. SIF Consultants of Louisiana, Inc.*, 13-972 (La.App. 3 Cir. 2/26/14), 133 So.3d 707, affirmed the trial court. While an application for writs to our Louisiana Supreme Court was pending, the plaintiff class settled with Executive Risk, but reserved it rights against Homeland.

Thereafter, the plaintiff class filed a motion for summary judgment against Homeland. The trial court granted the motion. Homeland appeals the granting of the plaintiff class' motions for summary judgment, raising the three assignments of error that follow:

## ASSIGNMENTS OF ERROR:

1.  The trial court's judgment is contrary to the principle of issue preclusion embodied in Louisiana's res judicata statute, La. R.S. 13:4231(1).

2.  The trial court abused its discretion in failing to apply judicial estoppel, thus allowing plaintiffs to take contrary positions in obtaining two contradictory summary judgments.

3.  The trial court committed legal error in granting plaintiffs' motion for summary judgment against Homeland despite a number of genuinely disputed issues of material fact.

## ASSIGNMENT OF ERROR NUMBER ONE:

Homeland asserts, in its first assignment of error, that the trial court's judgment was erroneous due to the principle of issue preclusion under La. R.S. 13:4231(1). We find no merit to this assertion.

DE NOVO REVIEW

Louisiana Revised Statutes 13:4231 states:

Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:

(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or

2

occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.

(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.

(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

Our Louisiana Supreme Court, in *Burguieres v. Pollingue*, 02-1385, p. 8 (La. 2/25/03), 843 So.2d 1049, 1053, stated:

A reading of La. R.S. 13:4231 reveals that a second action is precluded when all of the following are satisfied: (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation.

In the case before us, Homeland argues that a previous opinion of this court affirming the grant of a motion for summary judgment against another defendant, Executive Risk, finding that Executive Risk's policy provides coverage to the plaintiffs' claims, renders plaintiffs' assertion that Homeland's policy provides coverage to the plaintiffs' claims barred under res judicata. We find this argument to be without merit.

Homeland is not the same party as Executive Risk. However, courts have found that if there exists an "identity of parties," res judicata can apply. "Identity of parties exists whenever the same parties, their successors, or others appear so long as they share the same 'quality' as parties." *Mandalay Oil & Gas, L.L.C. v. Energy Development Corp.*, 01-993, pp. 16-17 (La.App. 1 Cir.), 880 So.2d 129, 140.

3

Homeland argues that being a party to the litigation that produces the preclusive judgment satisfies the "identity of parties" requirement citing *Williams v. Orleans Levee Dist.*, 09-2637 (La. 4/5/10), 31 So.3d 1048. We find no such absolute in our reading of *Williams*. In *Williams*, our supreme court dealt with a discharged employee who was attempting to relitigate whether he was improperly discharged. The *Williams* plaintiff brought a complaint before the Civil Service Commission. The commission found that the employee's behavior justified discipline and eventually suspended him for thirty days. The Orleans Levee District and the employee both appealed to the First Circuit. The First Circuit found that the employee "intentionally and purposefully disregarded the established procedures for an employee to pursue his grievance by using legal counsel and television media to interrogate and expose the appointing authority to embarrassment and ridicule." *Williams v. Orleans Levee Dist., Bd. of Comm'rs*, 00-297, p. 6 (La.App 1 Cir. 3/28/01), 784 So.2d 657, 660, *writ denied*, 01-1730 (La. 9/14/01), 796 So.2d 686. As such, the First Circuit found that the employee was reasonably terminated based on insubordination, and writs were denied in that first case.

While the first case was pending before the commission, prior to First Circuit's ruling, the employee filed several suits for various claims in district court that were eventually consolidated against the Orleans Levee District, its board of commissioners, and the State. Once the First Circuit's opinion finding that the employee was reasonably terminated was final, the Orleans Levee District and the State filed a motion in the subsequent consolidated suits against them contending that those suits were barred by res judicata.

Our supreme court found that res judicata applied to both the claims against the Orleans Levee District and the State even though the State was not a party to

4

the first proceeding starting in the commission and ending in the First Circuit. Homeland cites the following language from the *Williams* case for its proposition that being a party to the litigation that produces the preclusive judgment satisfies the "identity of parties" requirement:

> [T]he preclusive effect of the previous judgment is not being used against a nonparty to the litigation. The respondent is not being precluded from contesting a matter that he has not had full and fair opportunity to litigate. To the contrary, the respondent was a party to the litigation in which it was determined that he was fired for cause.

*Williams*, 31 So.3d at 1049.

Homeland reads this language in *Williams* to stand for its proposition. We do not share in this strained interpretation.

It is quite clear that the language cited above references the fact that the first matter decided by the First Circuit was fully litigated by the employee, i.e., whether he was wrongfully discharged. The reason why our supreme court found that the employee's suits against the Orleans Levee District and the State were barred by res judicata is because the plaintiff already litigated the issue of whether he was wrongly terminated, not because he was a party to the matter.

Accordingly, we find that Homeland does not "share the same 'quality' as parties" with Executive Risk so as to have "identity of parties" as required to apply res judicata. *Mandalay Oil & Gas, L.L.C.*, 880 So.2d at 140. Homeland is clearly not Executive Risk and puts forth no reasoning why it can meet the identity of parties requirement under La. R.S. 13:4231.

Moreover, the trial court's judgment affirmed by this court in *Williams*, 133 So.3d 707, states that "the Plaintiff Class's Motion for Partial Summary Judgment Against Defendant Executive Risk Specialty Insurance Company on the Issue of Coverage is hereby GRANTED. The Court finds that the Executive Risk Specialty Insurance Company errors and omissions policy at issue provides coverage for the

Plaintiff Class's claims." That judgment of the trial court, affirmed by this court, applies to Executive Risk and its policy, not Homeland and its policy.

Homeland is an entirely different entity with an entirely different policy. In this appeal, we are asked to decide the merits of an entirely new argument as to how that entirely different policy between the plaintiff class and an entirely different entity provides coverage. Accordingly, this matter does not arise "out of the transaction or occurrence that was the subject matter." *Burguieres*, 843 So.2d at 1053.

Given the above, we find no merit to Homeland's first assignment of error.

## ASSIGNMENT OF ERROR NUMBER TWO:

In its second assignment of error, Homeland contends that the trial court abused its discretion in failing to apply judicial estoppel, thus allowing plaintiffs to take contrary positions in obtaining two contradictory summary judgments. We do not agree.

> In *Miller v. Conagra, Inc.*, 08-21 (La.9/8/08), 991 So.2d 445, our Louisiana Supreme Court stated:

> > [T]he Supreme Court of the United States has generally described judicial estoppel as an equitable doctrine designed to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment. *New Hampshire v. Maine*, 532 U.S. 742, 749-50, 121 S.Ct. 1808, 1814-15, 149 L.Ed.2d 968 (2001). Because it is an equitable doctrine, it is invoked at the court's discretion. *Id*. at 750, 121 S.Ct. at 1815.

> *Miller*, 991 So.2d at 452.

> In *New Hampshire v. Maine*, the United States Supreme Court articulated three non-exclusive but typically existing factors for determining whether judicial estoppel should apply:

> > First, a party's later position must be "clearly inconsistent" with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position,

6

so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled," *Edwards [v. Aetna Life Ins. Co.]*, 690 F.2d [595], 599 (6th Cir.Mich., 1982). Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations," *United States v. C.I.T. Constr. Inc.*, 944 F.2d 253, 259 (C.A.5 1991), and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts.

*New Hampshire v. Maine*, 532 U.S. at 750-51, 121 S.Ct. at 1815 (some citations omitted).

*State ex rel. A.L.*, 09-1565, pp. 6-7 (La.App. 3 Cir. 4/7/10), 34 So.3d 416, 420.

In this case, while it is true that the plaintiffs' position in this summary judgment is different than previously, this inconsistency is based on an argument the merits of which have not been adjudicated. Their previous position was that a "claim," as defined in Executive Risk's policy, was first filed during the time when Executive Risk's policy was in effect. Now, they are arguing that a "claim," as defined in Homeland's policy, was first filed during the time that Homeland's policy was in effect because under Homeland's policy a "claim" must be a covered claim.

Moreover, as stated above, Homeland and Executive Risk are two entities with two separate contracts. We cannot say that Homeland is placed at a disadvantage nor can we say that the plaintiffs gained an advantage by the alleged inconsistency in the plaintiffs' positions. It is certainly not a violation of traditional notions of fairness for a defendant insurance company to defend against

a contention that its insurance policy provides coverage in a case simply because the plaintiffs said its codefendant's policy provided coverage.

Accordingly, after reviewing the record, we find no abuse of discretion by the trial court in not applying judicial estoppel to estop the plaintiffs from arguing that Homeland's policy provides coverage in this case. As such, we find that Homeland's second assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER THREE:

In its final assignment of error, Homeland avers that the trial court committed legal error in granting plaintiffs' motion for summary judgment against it despite a number of genuinely disputed issues of material fact. We find no such genuine issues of material fact exist.

> "Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate." *Elliott v. Continental Cas. Co.*, 06-1505, p. 10 (La. 2/22/07), 949 So.2d 1247, 1253 (quoting *Reynolds v. Select Props., Ltd.*, 93-1480 (La. 4/11/94), 634 So.2d 1180, 1183). A summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art.966(B)(2).[5]
>
> > [5] We note that La.Code Civ.P. art. 966 was amended by 2015 La. Acts No. 422, § 1, and its provisions became effective on January 1, 2016. This matter is considered applying the provisions of the Louisiana Code of Civil Procedure as they existed at the time of the trial court's consideration. See 2015 La. Acts. No. 422, § 2 which states: "The provisions of this Act shall not apply to any motion for summary judgment pending adjudication or appeal on the effective date of this Act."

*Savoie v. Calcasieu Parish Ward Four Fire District No. 2*, 16-172, p. 5 (La.App. 3 Cir. 9/28/16), 200 So.3d 407, (footnote in original).

"Interpretation of an insurance policy ordinarily involves a legal question that can be properly resolved by a motion for summary judgment." *Bernard v. Ellis*, 11-2377, p. 9 (La.7/2/12), 111 So.3d 995, 1002.

An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. If the words of the policy are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and the agreement must be enforced as written. An insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. The policy should be construed as a whole and one portion thereof should not be construed separately at the expense of disregarding another. If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer who issued the policy and in favor of the insured.

*Crabtree v. State Farm Ins. Co.*, 93-509, p. 6 (La.2/28/94), 632 So.2d 736, 741

(citations and footnotes omitted).

Homeland's policy issued to CorVel defines "Claim" as:

any written notice received by any Insured that a person or entity intends to hold an Insured responsible for a Wrongful Act which was committed or allegedly committed on or after the Retroactive Date listed in ITEM 7 of the Declarations. In clarification and not in limitation of the foregoing, such notice may be in the form of an arbitration, mediation, judicial, declaratory or injunctive proceeding. A Claim will be deemed to be made when such written notice is first received by any Insured.

Homeland's policy defines "Related Claims" as:

all Claims for Wrongful Acts based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events, whether related logically, causally or in any other way.

One of the conditions of Homeland's policy is that all "Related Claims" are deemed a single claim and are considered to have occurred on a single date. The policy states:

All Related Claims, whenever made, shall be deemed to be a single Claim and shall be deemed to have been first made on the earliest of the following dates:

(1)  the date on which the earliest Claim within such Related Claims were received by an Insured; or

9

> (2) the date on which written notice was first given to the Underwriter of a Wrongful Act which subsequently gave rise to any of the Related Claims, regardless of the number and identity of claimants, the number and identity of Insureds involved, or the number and timing of the Related Claims, even if the Related Claims comprising such single Claim were made in more than one Policy Period.

There is no dispute that the 2006 class arbitration claim was made and reported during the period of Homeland's policy. Homeland's insured, CorVel, admits that it did not comply with the notice requirements mandated by the Louisiana PPO Act. As such, the plaintiff class has carried its burden of proof that its Title 40 Claims are covered claims under Homeland's policy. Therefore, unless Homeland can point out any circumstances that lead to a finding that its policy does not provide coverage to the claims of the plaintiff class, the motion for summary judgment was appropriately granted by the trial court.

Homeland's assignment of error alleges genuine issues of material fact as to whether the first "Related Claim" against CorVel was made during Executive Risk's policy period rather than Homeland's. Homeland contends that the 2005 demand for contractual indemnity or the 2005 workers' compensation claims filed against CorVel constituted the first "Related Claims" against CorVel. As such, according to the language of its policy, all the claims are considered to have been made during Executive Risk's policy, and, thus, are not covered by its policy.

The plaintiff class responds to this argument asserting that the trial court correctly concluded that neither the 2005 demand for contractual indemnity nor the 2005 workers' compensation claims would have been covered by Homeland's policy. According to the plaintiff class, were we to interpret Homeland's policy as Homeland puts forth, it would read, "[Homeland] agrees to pay on behalf of

10

[CorVel] any loss which [CorVel] is legally obligated to pay as a result of claims not covered by this policy…."

The trial court found, and we agree, that in order for the 2005 demand for contractual indemnity or the 2005 workers' compensation claims to be a basis for Homeland to deny coverage, those instances must be a "Related Claim" to the plaintiff class' claims and also be "Claims" that are covered under Homeland's policy. The trial court cited *Benefits Systems & Services, Inc. v. Traveler's Casualty and Surety Company of America*, 07-3922 (N.D.Ill. 4/22/09), ___ NE.2d ___ to support its finding. In *Benefits Systems*, the court considered language similar to the language in Homeland's policy. It found that because a claim is not covered under a policy, subsequent claims cannot relate back to that non-covered claim for purposes of having all subsequent claims treated as if they occurred at the time of that single, non-covered claim. The *Benefits Systems* court stated on Page 6 of its opinion, the following:

> The remaining question is whether the Plunkett Counterclaim is covered under the Policy. It is undisputed that Plunkett filed its initial counterclaim against BSSI on January 19, 2007. This was outside policy period. Therefore, the Plunkett Counterclaim is not covered unless it was related to a claim that was made during the policy period. BSSI argues that the Plunkett Counterclaim was related to the University Complaint, which was made during the policy period. As noted above, the Policy defines "Related Claims" to mean "all Claims based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events." However, the Policy also provides: "All Related Claims are a single Claim for purposes of all applicable Liability Coverage Parts, and all Related Claims shall be deemed to have been made at the time the first such Related Claim was made, regardless of whether such date is before or during the Policy Period." BSSI's argument fails, however, because the University Complaint was not a covered claim under the Policy. Thus, the Plunkett Counterclaim cannot be a related claim because there was no earlier claim to which it could relate back.

The trial court found that Homeland's policy excluded any workers' compensation claims and also excluded any tort claims. Therefore, the trial court

11

found that the 2005 demand for contractual indemnity and the 2005 workers' compensation claims could not be "Related Claims" so as to absolve Homeland of providing coverage of the plaintiff class' claims.

We agree with the trial court's reasoning. Our reading of Homeland's policy is such that that the 2005 demand for contractual indemnity and the 2005 workers' compensation claims are not "Related Claims" under Homeland's policy. The plaintiff class' claims are not related to workers' compensation claims or contractual indemnity claims. The plaintiff class did not bring the 2005 demand for contractual indemnity or the 2005 workers' compensation claims. Finally, per the reasoning in *Benefit Systems*, Homeland's policy provides coverage to the plaintiff class' claims. Accordingly, we find that this assignment of error lacks merit.

## DISPOSITION:

Homeland Insurance Company of New York raises three assignments of error. We find no merit to any of these assignments. As such, we affirm the trial court's findings and judgment and assess all costs of these proceedings to Homeland Insurance Company of New York.

**AFFIRMED.**

12